# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Civil Action No.: _____

HUNDRED CJSC

      Plaintiff,

-against-

LERA INVESTMENT TECHNOLOGIES, INC.

      Defendant.

## COMPLAINT

Plaintiff HUNDRED CJSC ("Plaintiff" or "Hundred"), by and through undersigned counsel, alleges on knowledge as to itself and its own actions, and on information and belief as to all other matters, as to its Complaint against Defendant, LERA INVESTMENT TECHNOLOGIES, INC. ("Defendant" or "LIT"), as follows:

## NATURE OF ACTION

1. This is an action for breach of contract, or quasi-contractual claims in the alternative. Since 2021, Plaintiff has provided cloud-based financial back-office services for LIT, pursuant to the Parties' written contract. However, Defendant stopped paying for these services beginning in June 2024 (the same month that it fired its founder as part of a bitter dispute among its shareholders). Plaintiff presented Defendant with monthly invoices from June 2024 through January 2025. Defendant never objected to these invoices and expressly promised to pay the amounts owed. Yet it has not done so. It has also refused Plaintiff's attempts to resolve the dispute as required by the contract, and has ignored a request for mediation.

2. Plaintiff therefore brings this action to recover payment of at least $173,924, consisting of $153,334 as the principal price for the services rendered, and $20,590 in continually accruing monthly late fees.

## PARTIES, JURISDICTION, AND VENUE

3. This is an action for damages that exceeds $75,000.

4. Plaintiff Hundred CJSC is a company with its principal place of business in the Republic of Armenia and established under Armenian law.[1] It provides remote financial back-office services to other businesses.

5. Defendant Lera Investment Technologies, Inc. is a Delaware corporation,[2] registered to do business in Florida, with its principal place of business at 1111 Brickell Avenue, Suite 2775, Miami, Florida 33131. It offers technology as a service (TaaS) to major companies around the world.

6. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because the claim against Defendant exceeds the $75,000 jurisdictional threshold and Plaintiff's citizenship is completely diverse from Defendant's citizenship. This Court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193(2) because Defendant has its principal place of business in Florida, and pursuant to Fla. Stat. § 48.193(1)(a)(1) because Defendant operates, conducts, and engages in business in Florida, and transacted with Plaintiff in furtherance of this business.

---

[1] Its legal form under Armenian law is a "closed joint-stock company," which is equivalent to a non-public corporation under the law of most U.S. states.

[2] Defendant LIT started as a Delaware limited liability company, but was converted into a Delaware corporation in January 2023.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of residence in Miami-Dade County and is subject to this Court's personal jurisdiction.

## GENERAL ALLEGATIONS

### A. Plaintiff Performs the Master Services Agreement and Statements of Work.

8. On September 15, 2021, Plaintiff and Defendant entered into a Master Services Agreement ("Agreement"), attached as **Exhibit A** to this Complaint.

9. Under the Agreement, Plaintiff was obligated to provide Defendant with "deliverable[s]" that the Parties would describe in Statements of Work ("SOW") on which they would separately agree. The SOWs were incorporated into the Agreement.

10. The Agreement provides that Defendant has an "Inspection Period" of seven working days after Plaintiff provided it with a deliverable to determine whether the deliverable met the criteria specified in the applicable SOW. Defendant would be deemed to accept the deliverable unless it communicated an objection before the end of the Inspection Period.

11. The term of the Agreement began on September 15, 2021 and continued indefinitely until it was terminated by either Party, upon 30 days' written notice. Defendant has not terminated the Agreement as of the filing of this Complaint.

12. The Parties agreed on and signed seven SOWs pursuant to the Agreement. Each SOW stated that Plaintiff would provide a type of financial back-office service to Defendant on an ongoing basis, for which Defendant would pay Plaintiff a monthly fee. Defendant was obligated to pay invoices within five business days after Plaintiff presented them by email.

13. The seven SOWs are attached as a combined **Exhibit B** to this Complaint. They are summarized in the table below.

| SOW No. | Type of Service | Date Service Began | Monthly Fee |
|---|---|---|---|
| 1 | General ledger accounting | October 1, 2021 | $3,000 |
| 2 | Upload FY 2019 and FY 2020 financial statements into NetSuite<br><br>Creation of vendor and client database<br><br>Ongoing support with NetSuite | December 8, 2021 | $4,000 |
| 3 | Setting up reporting and controlling infrastructure for tracking client orders | December 8, 2021 | $4,000 |
| 4 | Migrate trial balances and general ledger of Defendant's subsidiaries into NetSuite for group reporting<br><br>Enhance account reconciliation process | May 1, 2022 | $4,000 |
| 5 | Daily general ledger transaction posting and bank statement reconciliation | June 1, 2022 | $2,000 |
| 6 | Daily invoice issuance, payment application, client statement reconciliation, and other ad hoc accounts-receivable related tasks | December 16, 2023 | $3,000 |
| 7 | Support financial audit process, including compilation of data and compliance with reporting standards | June 1, 2023 | $7,000 |

14. Plaintiff performed these services. Defendant, satisfied with Plaintiff's performance, continually expanded Plaintiff's scope of work as seen in the evolution of the SOWs.

15. Defendant accepted Plaintiff's services and paid Plaintiff $617,550 for them, pursuant to thirty-two monthly invoices issued from October 2021 through May 2024.

**B.  Defendant's Shareholders Become Embroiled in a Financial Dispute that comes to a head in June 2024.**

16. Defendant's three major beneficial owners were Robert M. Koffler (the sole founder of the company), Camilo Montana, and Gabriel Holschneider. They each beneficially owned a 33% interest in Defendant (through their respective investment vehicles) until June 2023, when Defendant received equity funding from an institutional investor. At that point, Messrs.

4

Koffler, Montana, and Holschneider reduced each of their beneficial ownership interests in Defendant to the low 20%.

17. Defendant continued to seek additional new investors and debt financing.

18. In 2024, a dispute arose between Koffler, Montana, and Holschneider.[3] Persons within the company alleged that Koffler engaged in improper or unlawful conduct. For his part, he accused the other two shareholders of converting his shares in Defendant for themselves.

19. On June 17, 2024, Defendant terminated Koffler from his paid position as Head of Capital Markets and Funding Facilities and removed him from its Board of Directors.

20. Defendant was not able to secure the desired additional debt or equity financing.

**C.  Beginning in June 2024, Defendant Stops Paying for Plaintiff's Services.**

21. Also beginning in June 2024, although Defendant continued to accept Plaintiff's services, it stopped paying for them.

22. Plaintiff continued performing financial back-office services for Defendant under the Agreement and seven SOWs.

23. Plaintiff issued Defendant eight invoices for services rendered from June 2024 through January 2025, on the last day of each month. These invoices are attached as a combined **Exhibit C** to this Complaint.

24. Defendant did not object to any of these invoices.

25. On November 18, 2024, Plaintiff's CEO wrote to Defendant's Chief Operating Officer, Jaime Cohen, to check on the status of the unpaid invoices from June through October. He warned that the situation "is becoming critical" and Plaintiff may have to freeze its services.

---

[3] Mr. Koffler's version of this dispute is described in *Robert Koffler v. Lera Investment Technologies, Inc.*, Case No. 24 Civ. 24563 (RKA) (ECF No. 1) (Nov. 19, 2024), currently pending before the Court.

5

26. On November 20, 2024, Mr. Cohen expressly acknowledged Defendant's payment obligation:

> First of all my apologies for not responding earlier. I was trying to have a better idea on incoming/availability of funds as we are looking at various paths, including some immediate/smaller options (shareholders) and other short term/larger alternatives. Although I still do not have certainty over how much/when funds will be injected, ***I can confirm that Hundred is a critical vendor to us and we are committed to making this payment a priority***. We appreciate and greatly value your commitment and support during this time. We fully acknowledge the difficulties this is causing you and will look to correct this as soon possible. [Emphasis added].

27. Plaintiff's CEO responded that same day that Plaintiff would need to take out a loan to manage its own liquidity in the absence of the receivable from Defendant, and therefore "it would be fair to apply a late fee to the unpaid invoices to help cover the loan expenses until liquidity is restored." He then presented a table calculating a 1.5% monthly late fee on the overdue invoices.

28. Defendant's Chief Operating Officer, Jaime Cohen, responded the same day, "[W]e are in agreement with this and will cover the late fee. Again, we appreciate your support during this time."

29. However, Defendant never made the payments owed.

**D.    Defendant Rejects Attempts to Resolve the Dispute and Ignores a Request for Mediation.**

30. Per the Agreement, Plaintiff attempted to resolve this dispute with Defendant, in particular by speaking with Mr. Cohen; Defendant's Finance Director, David Vurgait; and its Finance Controller, Carlos Porras. They repeatedly alleged that Defendant could not settle the invoices until it secured debt or equity financing, and that prior potential deals for such financing had fallen through.

31. On January 31, 2025, along with the invoice for the services rendered that month, Plaintiff sent to Defendant a notice that in light of the ballooning outstanding balance, it was pausing its services.

32. On March 31, 2025, Plaintiff wrote to Defendant again, stating that it hadn't heard from Defendant for three months. Plaintiff also demanded payment and an update on the "status of LIT and our service contract."

33. On July 10, 2025, Plaintiff through undersigned counsel sent a letter to Defendant offering to mediate this dispute before D. Andrew Byrne, who is on the Certified Mediator List of the Court. Mr. Byrne had confirmed to undersigned counsel his willingness and availability to conduct a cost-effective mediation.

34. Defendant has not responded to this letter.

35. The amount owed under the unpaid invoices pursuant to the fees established in the SOWs is $153,334. The late fees accrued as of the date of this Complaint amount to $20,590. The total amount owed is $173,924 and counting.

36. This is summarized in the table below:

| Invoice No. | Service Period | Payment Due Date | Amount | Days Overdue | 1.5% monthly late fee (prorated) |
|---|---|---|---|---|---|
| LIT-2024/40 | Jan. 2025 | 02/07/2025 | $19,000 | 164 | $1,558 |
| LIT-2024/39 | Dec. 2024 | 01/07/2025 | $19,000 | 195 | $1,853 |
| LIT-2024/38 | Nov. 2024 | 12/07/2024 | $19,000 | 227 | $2,157 |
| LIT-2024/37 | Oct. 2024 | 11/07/2024 | $19,000 | 256 | $2,432 |
| LIT-2024/36 | Sep. 2024 | 10/07/2024 | $19,000 | 287 | $2,727 |
| LIT-2024/35 | Aug. 2024 | 09/07/2024 | $26,000 | 318 | $4,134 |
| LIT-2024/34 | Jul. 2024 | 08/07/2024 | $26,000 | 348 | $4,524 |
| LIT-2024/33 | Jun. 2024 | 07/07/2024 | $6,334 | 381 | $1,207 |
| *Subtotal* | | | *$153,334* | | *$20,590* |
| **Total** | | | | | **$173,924** |

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Contract)**

37. Plaintiff repeats and re-alleges paragraphs 1-36 as though fully set forth herein.

38. Plaintiff and Defendant entered into a contract in the form of the Agreement and seven SOWs (Exhibits A and B to this Complaint).

39. Plaintiff performed its obligations under the Agreement and seven SOWs, by providing to Defendant the financial back-office services specified in the seven SOWs. Defendant accepted all of these services.

40. Defendant has breached its obligations, by failing to pay the fees specified in the SOWs for the services rendered from June 2024 through January 2025, and the late fees to which Defendant agreed on November 20, 2024. The outstanding amount under the invoices, including late fees, is currently $173,924.

41. By reason of Defendant's breaches of the agreement, Plaintiff has been damaged in the amount of at least $173,924, plus additional late fees and costs of collection.

42. Accordingly, Defendant is liable to Plaintiff for breach of contract in the amount of $173,924, plus additional late fees thereon, together with all costs of collection.

### SECOND CAUSE OF ACTION
**(Account Stated)**

43. Plaintiff repeats and re-alleges paragraphs 1-36 as though fully set forth herein.

44. Plaintiff alleges, in the alternative to its breach of contract cause of action, that it is entitled to recover under the doctrine of account stated.

45. Plaintiff provided financial back-office services to Defendant.

46. Plaintiff presented invoices to Defendant for these services on June 30, 2024; July 31, 2024; August 30, 2024; September 30, 2024; October 31, 2024; November 30, 2024; December 31, 2024; and January 31, 2025. (These are Exhibits C to this Complaint.)

47. Defendant did not object to these invoices. Furthermore, on November 20, 2024, Defendant expressly promised to pay the invoices for Plaintiff's services and agreed to pay a 1.5% monthly late fee thereon.

48. Defendant has failed to pay $173,924 that is presently due and owing under the invoices (including the late fee).

49. Accordingly, true and just accounts have been stated as between Defendant and Plaintiff, and Defendant is liable to Plaintiff on the accounts stated in the amount of $173,924, plus additional late fees thereon, together with all costs of collection.

## THIRD CAUSE OF ACTION
### (Open Account)

50. Plaintiff repeats and re-alleges paragraphs 1-36 as though fully set forth herein.

51. Plaintiff alleges, in the alternative to its breach of contract cause of action, that it is entitled to recover under the doctrine of open account.

52. From September 2021 through January 2025, Plaintiff continuously provided financial back-office services to Defendant, and expected to continue to do so.

53. Defendant agreed to pay for these services.

54. Therefore an account existed between Defendant and Plaintiff.

55. There is an unsettled debt owed for the services Plaintiff provided from June 2024 though January 2025, as Defendant has failed to pay for these services.

56. The amount of this debt is $173,924.

57.     Accordingly, Defendant is liable to Plaintiff to settle the open account in the amount of $173,924, plus additional late fees thereon, together with all costs of collection.

## FOURTH CAUSE OF ACTION
### (Quantum Meruit)

58.     Plaintiff repeats and re-alleges paragraphs 1-36 as though fully set forth herein.

59.     Plaintiff alleges in the alternative to its breach of contract cause of action, that Plaintiff is entitled to recover under the doctrine of quantum meruit.

60.     From October 2021 through January 2025, Plaintiff performed financial back-office services for Defendant.

61.     Defendant acquiesced in the provision of these services, by, *inter alia*, using the services, asking Plaintiff to expand its scope of work, paying Plaintiff's invoices until June 2024, failing to object to Plaintiff's invoices issued after that date, and promising to pay those invoices and late fees.

62.     Plaintiff had an expectation of compensation for the services it performed, and Defendant was aware of this expectation as evidenced by its acknowledgment of the payment obligation on November 20, 2024 and in subsequent oral conversations initiated by Plaintiff to resolve the dispute.

63.     The reasonable value of Plaintiff's services is established by the amount on Plaintiff's invoices and the late fees to which Defendant agreed.

64.     Accordingly, Plaintiff is entitled to the reasonable value of its services, which is $173,924, plus additional late fees thereon, together with all costs of collection.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

65.     Plaintiff repeats and re-alleges paragraphs 1-36 as though fully set forth herein.

66. Plaintiff alleges in the alternative to its breach of contract case of action, that Plaintiff is entitled to recover under the doctrine of unjust enrichment.

67. In the event the Court finds that the Parties do not have a valid and enforceable contract, Plaintiff will lack an adequate remedy at law.

68. Defendant has received a benefit from Plaintiff, namely high-quality financial back-office services. The benefit is specific and direct to Defendant because Defendant itself requested these services from Plaintiff, and they were tailored to Defendant's business operations.

69. This benefit came at Plaintiff's expense, as Plaintiff performed the services for Defendant and did not receive full compensation.

70. Equity and good conscience require restitution to Plaintiff of the reasonable value of the services it provided to Defendant.

71. Accordingly, Plaintiff is entitled to $173,924, plus additional late fees thereon, together with all costs of collection.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully demands entry of judgment in its favor and against Defendant as follows:

72. That on any of the five causes of action this Court enter judgment against Defendant in the amount of $173,924, plus accumulated late fees to the date of judgment, post-judgment interest, and all costs of collection;

73. That Plaintiff be awarded all costs of this action, including attorney's fees and expenses; and

74. That Plaintiff receives such other and further relief as the Court deems just and proper.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 21, 2025 | **LEWIS BAACH KAUFMANN MIDDLEMISS PLLC** |
|  | ___/s/ Elizabeth M. Velez_____ |
|  | Elizabeth M. Velez (Fla. Bar No. 73614) |
|  | Alexander S. Bedrosyan (*pro hac vice* forthcoming) |
|  | 10 Grand Central |
|  | 155 East 44th Street |
|  | 25th Floor |
|  | New York, NY 10017 |
|  | Tel: (212) 826-7001 |
|  | Fax: (212) 826-7146 |
|  | elizabeth.velez@lbkmlaw.com |
|  | alexander.bedrosyan@lbkmlaw.com |
|  | *Attorneys for Plaintiff* |