# EXHIBIT A



# Master Services Agreement N 01

This Master Services Agreement "Agreement" is made and effective on September 15, 2021,

BETWEEN:     Hundred CJSC "Hundred t", "SERVICE PROVIDER" or "PROVIDER", a corporation organized and existing under the laws of the Republic of Armenia. with its head office located at: 15 Movses Khorenatsi Street, Yerevan, 0010, Armenia

AND:     Lera Investment Technologies, a Delaware limited liability company, "LIT", "CLIENT", a corporation organized and existing under the laws of State of New York / New York, with its head office located at: 1111 Brickell Avenue, Suite 2750, FL 33131 (collectively referred to herein as the "Parties", and each a "Party")

## 1. SCOPE OF SERVICES.

PROVIDER shall provide CLIENT with the services and products described in the Statements of Work "SOW".

The SOW must describe the respective contribution and services of each Party. Any services provided by either Party under this Agreement are referred to as the "Services".

 For the purposes of this Agreement, the Party engaged to perform the Services, PROVIDER, is the "Performing Party" and the Party for whom the Services are to be performed, CLIENT, is the "Engaging Party".

All SOWs that are negotiated between the Parties shall be in writing and executed by both Parties and shall be attached hereto as supplemental Exhibits, and shall be incorporated into, and governed by, this Agreement.

## 2. STATEMENT OF WORK (SOW)

**Contents of Statements of Work**

The Parties shall describe each individual deliverable to be provided under this agreement in its own Statement of Work (each, a "Statement of Work"), each one including

a complete description of the deliverable provided under the Statement of Work,

the applicable fees and fee schedule, including any milestones and milestone payments if applicable, for the particular deliverable,



the service levels and acceptance criteria for the particular deliverable, any materials the Parties will provide for the particular deliverable,

a timeline for providing the particular deliverable, and

a unique identification number for the Statement of Work and explicit reference to this agreement.

**Integration.** A Statement of Work signed by both Parties, bearing a unique identification number, and making explicit reference to this Agreement, shall be deemed to form an integral part of this Agreement.

**Severable.** The Parties may terminate any individual Statement of Work without affecting the rest of the agreement or any other Statement of Work.

**Conflict of Terms.** If there is a conflict between the terms of this agreement and any Statement of Work, the Statement of Work shall prevail.

## Changes to Statements of Work

**Proposing Changes.** Either Party may propose amendments to the Statement of Work deliverable, fees, or schedule by giving written notice to the other Party.

**Finalizing Changes.** If the Parties agree to change the deliverable, fees, or schedule of a Statement of Work the Parties shall cooperate to execute a written amendment to the relevant Statement of Work detailing the changes.

## Additional Statements of Work

**Request Additional Services.** CLIENT may request additional services by sending a written notice to PROVIDER reasonably detailing the services requested.

**Assess the Request.** After receiving a request for additional services from CLIENT, PROVIDER shall evaluate the request to determine whether there are circumstances preventing it from providing the requested services and, if there are no circumstances preventing it from providing the requested services, shall provide CLIENT with the estimated fees and timelines for such requested services.

**Execute New Statement of Work.** If after receiving PROVIDER's estimates CLIENT still wants the requested services, the Parties shall execute a new Statement of Work according to the requirements of paragraph **CONTENT OF STATEMENTS OF WORK**.

## Acceptance and Rejection

**Inspection Period.** CLIENT shall have an "Inspection period" of 7 working days after PROVIDER has provided the deliverable to review and verify that the deliverable meets the acceptance criteria as set out in the applicable Statement of Work (the "Inspection Period").



**Acceptance.** If in CLIENT's opinion the deliverable meets the acceptance criteria, CLIENT must accept the deliverable and notify PROVIDER that it is accepting the deliverable.

**Deemed Acceptance**. CLIENT shall be deemed to have accepted the deliverable if CLIENT fails to notify PROVIDER by the end of the inspection period, or if, during the inspection period, CLIENT uses or attempts to use the deliverable beyond what is necessary for the inspection and testing, in a manner that a reasonable person would consider compatible with, CLIENT having accepted deliverable from PROVIDER.

**Rejection.** If in CLIENT's opinion, the deliverable does not materially meet the acceptance criteria, CLIENT may reject the deliverable by delivering to CLIENT a written list detailing each failure to satisfy the acceptance criteria.

## 3. TERM

The term of this Agreement begins on September 15, 2021 and continues until such time as the Deliverables have been provided to the CLIENT in accordance with this Agreement or until such time as this Agreement is terminated by either Party in accordance with its terms.

## 4. BUDGET AND PAYMENT DEADLINE

The budget and payment deadline will be defined in each SOW. Unless otherwise provided in this Agreement, uncontested invoices are payable within 30 calendar days of receipt of the invoice.

## 5. INDEPENDENT CONTRACTOR

The relationship between PROVIDER and CLIENT shall, within the context of the SOW, be that of an independent contractor, and nothing in this Agreement should be construed to create a partnership, joint venture, or employer-employee relationship. Each Party shall, at all times during the term of this Agreement, perform the duties and responsibilities herein without any control by the other Party.

Either Party may realize a profit or loss in connection with performing the services. Either Party may render similar services for the benefit of others. Neither Party is an agent of the other Party and is not authorized to make any representation, contract, or contract commitment on behalf of the other Party.

## 6. DELIVERABLES

The PROVIDER shall provide the goods and/or services described in the Statement of Work (attached) of this Master Service Agreement.

## 7. CONFIDENTIALITY

Information shall be treated as confidential during the term of this Agreement and for a period of seven (7) years thereafter. During such period, the Parties will not:

(a) disclose the Confidential Information of the Disclosing Party to any third Party, using at least the same degree of care as it uses to protect its own confidential information, but not less than reasonable care or

DocuSign Envelope ID: 11D4E94A-9F86-418D-A634-7E3EA1CE7257



(b) use such information for any purpose other than to perform its obligations under this Agreement.

Confidential Information does not include information which

(i)  has previously been made generally available to the public,

(ii) becomes publicly known, without fault on the part of the Receiving Party, subsequent to disclosure by the Disclosing Party of such information to the Receiving Party,

(iii) is received by the Receiving Party any time from a source, other than the Disclosing Party, lawfully having possession of and the right to disclose such information,

(iv) otherwise becomes known by the Receiving Party prior to disclosure by the Disclosing Party to the receiving Party of such information, or

(v)  is independently developed by the Receiving Party without use of such information. The Receiving Party shall not disclose Confidential Information of the Disclosing Party except to officers, directors, employees, agents and consultants of the Receiving Party who are subject to the obligation of confidentiality on a "need-to-know" basis in negotiations between the Parties or if required by law, government regulation or court order, provided that the Receiving Party promptly informs the Disclosing Party of any legal requirement and cooperates with it in exercising its right to protect confidentiality . Upon termination of this Agreement, each Party will, upon request, return all copies of Confidential Information received from the other Party.

## 8. PROVIDER REPRESENTATION AND WARRANTIES

**PROVIDER REPRESENTS AND WARRANTS THAT:**

(i)   the Services will be performed in a commercially reasonable manner in accordance with the standards generally prevailing in the industry.

(ii)  neither this Agreement nor PROVIDER's performance of its obligations hereunder will place PROVIDER in breach of any other contract or obligation and will not violate the rights of any third Party.

(iii) the "work product", if any, shall not infringe or otherwise violate any third Party's copyright, trade secret, trade dress, patent, or other intellectual property right whatsoever; and

(iv)  if PROVIDER is a corporation, limited liability company, partnership or other business entity, it represents and warrants that it is duly organized, validly existing and in good standing under the laws of the state of its incorporation or organization, that it has all necessary power and has received all necessary approvals to execute and deliver this Agreement and to perform all matters described hereunder and that the individual executing this Agreement on its behalf has been duly authorized to act for and to bind it to the terms of this Agreement.

## 9. RESPONSIBILITY FOR PERSONNEL

All personnel provided or used by PROVIDER shall be considered employees or subcontractors of PROVIDER and shall not be considered employees, agents, or subcontractors of CLIENT for any purpose whatsoever. PROVIDER shall assume full responsibility for the actions of all such personnel in the performance of their duties under this Agreement and for the payment of their remuneration.



## 10. NO EXCLUSIVITY

Nothing in this Agreement is intended to create any obligation on the part of CLIENT to make referrals for work similar to the Services to be performed by PROVIDER hereunder exclusively to PROVIDER, nor shall CLIENT be prohibited from providing such services the by itself.

## 11. FORCE MAJEURE

Any delay or failure by a Party to perform its obligations hereunder shall be excused if and to the extent that it was caused by an event or occurrence beyond the reasonable control of that Party without fault or negligence ("Force majeure"). Force majeure includes, but is not limited to, acts of God, acts of any governmental authority (valid or not), fires, floods, windstorms, explosions, riots, natural disasters, wars, sabotage, terrorist acts, injunctions, or judicial orders. A Party invoking a case of Force majeure must notify the other Party in writing (including the expected duration of the delay) within ten days of the occurrence of the case of Force majeure. If the delay lasts more than 30 days, or if the Party claiming Force majeure does not provide the other Party with sufficient assurances that the delay will end within 30 days, the other Party may terminate this agreement upon written notice to the Party claiming force majeure.

## 12. DISPUTES

If either Party believes that the other Party is in breach of this Agreement (the "Dispute"), the aggrieved Party shall notify the other Party or its counsel (the "Notice") of the alleged breach and the Parties shall make a good faith attempt to resolve or clarify the dispute (the "Negotiations"). In the event that the Parties are unable to resolve the dispute in a cooperative manner, they will attempt, in good faith, to resolve the dispute by mediation in a mutually acceptable place ("mediation"), by retaining the services of a mediator who is familiar with the subject matter of the dispute and whom both Parties agree.

The applicable mediation costs shall be borne equally by the Parties. The mediation requirement is deemed to have been met if the filing Party has proposed a qualified mediator and offered to make itself reasonably available within 60 days of the notice, but mediation has not taken place or has not been completed within that 60-day period.

The requirement for mediation and negotiation may be waived by mutual written consent of the Parties. In addition, notwithstanding the foregoing, either Party may seek an injunction against a Party related to acts or omissions of that Party that violate this Agreement and cause or are likely to cause irreparable harm to the other Party, without recourse to mediation or negotiations.

## 13. MISCELLANEOUS

**13.1 Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all other prior or contemporary oral or written representations or agreements between CLIENT and PROVIDER regarding such subject matter.

Case 1:25-cv-23255-BB   Document 1-1   Entered on FLSD Docket 07/21/2025   Page 7 of 8



**13.2 Binding Nature.** This Agreement shall be binding upon and inure to the benefit of the Parties, their successors, assigns, personal representatives, distributes, heirs and legatees.

**13.3 Modification.** The Parties may modify this Agreement only by a written instrument executed by both Parties.

**13.4 Severability.** Except as otherwise provided in this Agreement, if any term or provision of this Agreement is held to be illegal or invalid, said illegality or invalidity shall not affect the remaining terms or provisions hereof, and each term and provision of this Agreement shall continue to the fullest extent permitted by law.

## 14. TERMINATION

This Agreement may be terminated by either Party upon 30 days prior written notice following expiration of the last remaining SOW, or if the other Party materially breaches this Agreement and such breach is not cured within 30 days following receipt of written notice of termination. Termination of this Agreement by either Party shall not affect the rights and obligations of the Parties accrued prior to the effective date of the termination. Upon termination of this Agreement, an Engaging Party shall pay a Performing Party unpaid Fees set forth in an associated SOW for Services provided through the date of termination, unless such termination was in connection with a breach or alleged breach of such Performing Party.

## 15. AMENDMENTS

This Agreement may only be extended, renewed, or otherwise amended by the mutual written consent of Parties hereto or as otherwise provided in this Agreement.

## 16. ASSIGNMENT

Neither Party hereto may assign, cede, or transfer any of its rights or obligations under this Agreement without the written consent of the other Party, whether by merger, acquisition, sale, operation of law, or otherwise.

## 17. WAIVER

No waiver of any term, provision, or condition of this Agreement whether by conduct or otherwise in any one or more instances shall be deemed to be or construed as a further or continuing waiver of any such term, provision, or condition, or of any other term, provision, or condition of this Agreement.

DocuSign Envelope ID: 11D4E94A-9F86-418D-A63A-7F3EA1CF7257



**Hundered CJSC**

**15 Movses Khorenatsi Street,
Elite Plaza Business Centre,
0010, Yerevan, Armenia**

DocuSign by:



Name: _____

**Lera Investment Technologies,
a Delaware limited liability
company,**

**1111 Brickell Avenue, Suite
2750, FL 33131**

DocuSign by:

kevin Walker

**Print Name and Title**

DS